IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

UNITED STATES OF AMERICA )
)
v. ) CASE NO. CR409-004
)
ANDRE JEROME ROUSE, )
)
Defendant. )
)

# O R D E R

Before the Court is the Report and Recommendation of the Magistrate Judge (Doc. 42), recommending that this Court deny Defendant's Motions to Suppress (Docs. 14 & 34). Defendant has filed timely objections. (Doc. 44.) In the Motions, the Defendant challenges the constitutionality of the following police actions: (1) the initial stop, (2) the search of a laundry basket, (3) the seizure of his cellular phone, and (4) two custodial interrogations. (Docs. 14 & 34.) After careful consideration and a *de novo* review of the record, the Court concurs with the findings of the Magistrate Judge with respect to the initial stop, the seizure of the cellular phone, and the police interrogations. Therefore, the Court **ADOPTS** those portions of the Report and Recommendation as its Opinion. However, the Court **SUBSTITUTES** the following analysis with respect to the search of the laundry basket and **DENIES** the Motion to Suppress.

## BACKGROUND

On November 7, 2008, Detective Yujean Foster responded to a report of armed robbery at the Ramsey Run Apartment Complex. (Doc. 45 at 36.) Foster knocked on the door of Apartment C-7, where the robbers were believed to be hiding. (Id.) The occupants did not answer, but were seen peeking through the blinds. (Id.) As the occupants would not voluntarily grant entry, Foster left to procure a warrant. (Id.)

As Foster left, Officer Michael Rodgers went to secure the apartment. (Id. at 6.) Rodgers went to the south side of the building and watched the staircase leading to the apartment. (Id. at 7.) However, Rodgers quickly realized that he could not secure the building alone and called Officer Pagliaro. (Id. at 8.) When Pagliaro arrived, he covered the opposite side of the building where he could watch the door to the apartment. (Id.)

Subsequently, Defendant arrived at the apartment building on Rodgers's side. (Id. at 10.) Rodgers did not intervene as Defendant walked into the apartment. (Id. at 10-12, 26.) Instead, Rodgers relayed the situation to Foster, who ordered Rodgers to detain anyone leaving the building. (Id. at 12.)

Minutes later, Defendant exited the apartment carrying a laundry basket and walking a dog. (Id.) Rodgers approached

2

Defendant with his weapon at the "low-ready" position.[1] (Id.) As the Defendant reached the bottom of the staircase, Rodgers ordered the Defendant to the ground. (Id. at 13.) According to Rodgers, the Defendant gave him a "deer in the headlights" look, but did not get down. (Id.) Despite several more loud commands, Defendant failed to comply. (Id.) Hearing the commands, Pagliaro hastened to the scene armed with a shotgun. Arriving behind Defendant, Pagliaro chambered a shell, causing Defendant to take a knee on the ground. (Id. at 14.) Eventually, Defendant fully complied with the commands. (Id. at 15.)

Pagliaro covered both Rodgers and the door while Rodgers quickly handcuffed and frisked the Defendant. (Id.) Defendant was removed from the scene and turned over to a third officer, Officer Cotter. (Id. at 16.) Given the haste of the initial frisk, Rodgers advised Cotter to re-frisk Defendant to ensure he was not armed. (Id.) Rodgers then secured the laundry basket and dog, and gave them to Officer Cotter, who placed them in the back of his vehicle. (Id.) The standoff with the remaining occupants continued for some time, during which Detective Foster returned with a search warrant. (Id. at 30.) Ultimately,

---

[1] In the low-ready position the officer has his weapon drawn, but the weapon is at a 45 degree angle to the target. (Id. at 13.)

3

police negotiators convinced the other occupants to surrender, ending the standoff. (Id.)

Defendant's mother learned of the events and arrived as the standoff was concluding. (Id.) After the standoff concluded, the mother inquired about the status of the puppy. (Id.) The negotiator, Officer Walden, called over the patrol car containing the basket and dog, and returned the dog. (Id. at 31.) As Walden returned the puppy, another officer suggested she return the laundry basket as well. (Id.) Upon removing the basket from the car, Walden immediately noticed that it was too heavy to contain only clothes. (Id.) Putting the basket on the ground, Walden ordered everyone to step back as she ran her hand through the basket. (Id.) She "hit a hard object that in [her] experience was the butt end of a handgun" and called Detective Foster, who conducted a full search of the basket. (Id.) In total, seven handguns were found in the basket—six were loaded and one had an obliterated serial number. (Id.) Next, the apartment was searched pursuant to the warrant, revealing Defendant's cellular telephone, which contained pictures of the guns in the basket. (Id. at 80.)

After the searches, Defendant was taken to the police station and read his Miranda rights. (Id. at 52.) He signed a form waiving those rights and submitted to an interview. (Id.) Defendant was asked to explain what happened that night. (Id.

4

at 56.) He stated that he returned home after work knowing that something was wrong because of a prior phone call from his brother. (Id.) When he entered the apartment the lights were off and he was given a laundry basket to take to the car of one of the occupants. (Id.) Defendant took the basket and the dog, and left the apartment to deliver the basket. (Id.) Defendant could not identify who owned any of the guns. (Id.)

Approximately a month later, Defendant was interviewed again by a different detective, Detective Hunt. (Id. at 62.) At the time, Defendant was under the effects of marijuana—a fact known to Detective Hunt. (Id. at 67.) However, "the degree of [Defendant's] intoxication was unknown." (Id.) Detective Hunt began the interview by advising Defendant of his Miranda rights, which Defendant then waived. (Id. at 62-64.) In this interview, Defendant repeated the story from the initial interview. (Id. at 67.) Then, after several additional minutes of interrogation, Defendant confessed to knowing the contents of the basket before leaving the apartment. (Id. at 65.) However, there is no record of the interview and waiver because the recording equipment was broken that day. Further aggravating this problem is the fact that Detective Hunt does not use the written waiver form because it conflicts with his "relaxed and less formal" interrogation style. (Id. at 66-67.)

5

**ANALYSIS**

Defendant argues that the contents of the laundry basket must be suppressed because the search violated his Fourth Amendment rights. (Doc. 14.) The Government responds that the warrant in this case covered the laundry basket, and that probable cause and exigent circumstances justified the search even if the warrant did not. (Doc. 40 at 1-5.) For the following separate and independently sufficient reasons, the Court **DENIES** the Motion to Suppress.

A. <u>Reasonable Expectation of Privacy</u>

"The accused bears the burden of demonstrating a legitimate expectation of privacy in the area searched." <u>United States v. Harris</u>, 526 F.3d 1334, 1338 (11th Cir. 2008). "A person has a legitimate expectation of privacy if (1) he has a subjective expectation of privacy, and (2) society is prepared to recognize that expectation as objectively reasonable." <u>Id.</u> Further, "[a] legitimate expectation of privacy [must] be proven by factors beyond mere possession, such as a right to exclude or a right to privacy." <u>Id.</u>; <u>see also</u> <u>Rakas v. Illinois</u>, 439 U.S. 128, 143-44 & n.12 (1978). And, "the legitimacy of [a] privacy claim is determined by the totality of the circumstances." <u>United States v. Baron-Mantilla</u>, 743 F.2d 868, 870 (11th Cir. 1984).

Here, Defendant has not satisfied this burden. Defendant has shown only "mere possession" of the laundry basket, which is

insufficient under the Fourth Amendment.  See Harris, 526 F.3d at 1338.  Defendant did not own the basket; instead, he briefly carried it before the police took it away.  (Doc. 45 at 80.)  Defendant has offered no evidence that he chose the basket with the intention that it would protect his privacy.  (Doc. 45 at 56.)  To be sure, Defendant did not choose the basket at all, rather it was chosen for him by the other occupants of the apartment.  (Id.)  Also, Defendant apparently had no right to exclude others from the basket, as evidenced by the fact that others filled the basket with contraband without Defendant's consent.  Surely, given the obvious police presence outside of the apartment, if Defendant had the capacity to exclude the contraband from the basket, he would have done so.

Therefore, the only evidence of a reasonable expectation of privacy in this case is Defendant's "mere possession" of the basket.  Such a showing does not allow for a Fourth Amendment claim.  See Harris, 526 F.3d at 1338.  Indeed, "a motion to suppress must in every critical respect <u>including allegations of standing</u>, be sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that a substantial claim is presented."  United States v. Eyster, 948 F.2d 1196, 1208-09 (11th Cir. 1991) (internal quotations omitted) (emphasis added).  Because Defendant's Motion to Suppress does not establish a reasonable expectation of privacy, it is **DENIED**.

B. Search Pursuant to a Warrant

Assuming, arguendo, that Defendant has a reasonable expectation of privacy, the Motion would still be denied because the premises warrant extended to the basket. Although the Eleventh Circuit has pondered whether a "premises" warrant covers items in the process of being carried outside the premises to be searched, it ultimately left the question open. See, e.g., United States v. Young, 909 F.2d 442, 445-46 (11th Cir. 1990), United States v. Rogers, 131 Fed. App'x 138, 140 (11th Cir. 2005) (unpublished table decision) ("As for the relationship test discussed in dicta in Young, although we may choose to apply that test in a future case, the facts of this case do not lend themselves to its application."). However, in considering the issue, the Eleventh Circuit "agree[d] with the position taken by the First Circuit Court of Appeals in United States v. Micheli, 487 F.2d 429 (1st Cir. 1973) and United States v. Gray, 814 F.2d 49, 51 (1st Cir. 1987)" that the appropriate test is to consider "the relationship between the object, the person and the place being searched." Young, 909 F.2d at 444-45. That test was applied by the First Circuit Court of Appeals in Gray to allow the search of a jacket where (1) the Defendant was "not, say, a casual afternoon visitor to the premises," (2) the police reasonably believed the Defendant to be involved in criminal activity, and (3) the jacket was a

8

"plausible repository" for items covered by the warrant. Gray, 814 F.2d at 51.

Here, as in Gray, the relationship between the object, the person, and place being searched satisfy this test. Defendant was not a casual visitor to the apartment, he was an occupant. Also similar to Gray, the police had good reason to believe criminal activity was afoot and that Defendant was a part of that activity. Finally, the laundry basket was a plausible repository for the the firearms and other items mentioned in the search warrant. (See Doc. 37, Ex. A., Search Warrant at 1.) Accordingly, the Court finds that under the Young test the warrant extended to the laundry basket.[2]

## CONCLUSION

The Court has considered the Report and Recommendation of the Magistrate Judge (Doc. 42) and Defendant's Objections (Doc. 44). After careful consideration and a de novo review of the record in this case, the Court concurs with findings of Magistrate Judge with respect to the constitutionality of the initial stop, the seizure of the cellular phone, and the police interrogations. Therefore, the Court **ADOPTS** those portions of the Report and Recommendation as its Opinion. However, the

---

[2] In Young the Eleventh Circuit went on to consider the applicability of the probable cause and exigent circumstances test. 909 F.2d 442. The Court declines to engage in such consideration here, given Defendant's lack of standing and the applicability of the search warrant.

9

Court **SUBSTITUTES** the above analysis with respect to the search of the laundry basket and **DENIES** the Motion to Suppress.

SO ORDERED this 28th day of October, 2009.

WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA